UNITED STATES of America ex rel.
Syed RAHMAN Plaintiff

v.

ONCOLOGY ASSOCIATES,
P.C., et al.   Defendants

No. CIV. H–95–2241.

United States District Court,
D. Maryland.

Oct. 30, 2002.

S. Hollis Fleischer, Office of the United States Attorney, Baltimore, MD, Michael F. Hertz, Polly A. Dammann, Daniel A. Spiro, Rebecca Rohr, United States Department of Justice, Mark Scott London, Christopher B. Mead, London and Mead, Washington, DC, for Plaintiff.

Charles Kevin Kobbe, Jodie Elizabeth Buchman, Piper Rudnick LLP, Baltimore, MD, Matthew Ralph Goldman, Law Office, Cleveland, OH, Shelby F. Mitchell, Ronald F. Wick, Baker and Hostetler, Washington, DC, Shawn J. Sefret, Rosenberg Proutt Funk and Greenberg LLP, Paul Mark Nussbaum, Kenneth Oestreicher, Whiteford Taylor and Preston, Baltimore, MD, Paul M. Sandler, Shapiro Sher Guinot and Sandler, Baltimore, MD, for Defendants.

Myles R. Wren, Scranton, PA, John R. Sullivan, Salisbury, MD, Reuben B. Col-

lins, II, Law Offices of Turner and Collins PLLC, Matthew Ralph Goldman, Law Office, Cleveland, OH, Shelby F. Mitchell, Ronald F. Wick, Baker and Hostetler, Washington, DC, for Movants.

David M. Gische, Ross Dixon and Bell LLP, Daniel James Standish, Wiley Rein and Fielding LLP, Washington, DC, Edwin J. Mills, Stull Stull and Brody, PH, New York City, Christopher L. Hamlin, McNamee Hosea Jernigan Kim, Greenan and Walker PA, Greenbelt, MD, Kimberly Luff Wakim, Thorp Reed and Armstrong LLP, Pittsburgh, PA, Andrew C. Kassner, David B. Aaronson, Drinker Biddle and Reath LLP, Philadelphia, PA, Matthew S. Sturtz, Joel Larkin Perrell, Jr., Miles and Stockbridge PC, Baltimore, MD, Joyce A. Kuhns, Karl Joseph Nelson, Saul Ewing LLP, Baltimore, MD, James C. Olson, Law Office of James C. Olson, Owings Mills, MD, David H. Dickieson, Buchanan Ingersoll PC, Washington, DC, for Interested Parties.

Paul M. Sandler, Shapiro Sher Guinot and Sandler, Baltimore, MD, John T. Brennan, Jr., Michaels, Wishner & Bonner PH, Jeffrey L. Tarkenton, Erik David Bolog, John David Folds, Womble Carlyle Sandridge and Rice, Washington, DC, for Third–party Plaintiffs.

Peter Konolige, Wayne, PA, for Third–party Defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Various parties have here asserted claims to the proceeds of an award made by a commercial arbitration tribunal of the American Arbitration Association. The background facts of the pending dispute are somewhat involved.

Following a hearing held on September 8, 2000, this Court entered an Order in this case approving three separate settlements which had been reached by the parties. *See United States ex rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 144 (D.Md.2001). Because of the interrelationship of this *Rahman* case and *In re EquiMed, Inc.*, Civil No. H–00–1216, the settlements reached were detailed and complex. *Id.* Dr. Douglas R. Colkitt ("Colkitt")and many entities controlled by him, including National Medical Financial Services, Inc. ("NMFS"), were defendants in this *Rahman* action and were among the settling parties. One of these three settlement agreements resolved this case with respect to defendant Colkitt and numerous corporations controlled in some manner by him. *Id.* That Agreement (the "*Rahman* Agreement") was later modified when the United States and other parties entered into a separate agreement styled "Modification of Settlement Agreements." That document sought to resolve disputes concerning the ownership of property which the EquiMed Trustee claimed as assets of the bankruptcy estate and concerning amounts to be paid to the United States under the *Rahman* settlements. *Rahman*, 269 B.R. at 147. The *Rahman* Agreement, as modified, provided the United States with a monetary judgment in the amount of $9,885,000 plus interest against defendant Colkitt and numerous corporate defendants.

Thereafter, the parties in the *EquiMed* bankruptcy case engaged in lengthy settlement negotiations. Eventually, the parties entered into the so-called "Global Settlement Agreement." The Trustee's motion for approval of the Global Settlement was granted by this Court for the reasons stated in its Opinion of November 1, 2001. *Rahman*, 269 B.R. at 143–167.

Colkitt was an officer and director of NMFS. He was the beneficiary under a directors' and officers' liability insurance policy ("the Policy") purchased by NMFS

from National Union Insurance Co. of Pittsburgh, PA ("National Union"). When Colkitt and NMFS were named as defendants in this *Rahman* case, Colkitt notified National Union of this action and requested coverage including a defense. Initially, National Union agreed to provide such a defense pursuant to the Policy but reserved its right to later deny coverage. Colkitt requested that the law firm of Pepper Hamilton LLP ("Pepper Hamilton") represent him in his capacity as a director and officer of NMFS. National Union agreed, and Pepper Hamilton's bills for services rendered in representing Colkitt in this case were initially paid by National Union.

As noted, this *Rahman* case was eventually settled, and this Court approved the three settlement agreements entered into by the parties. Paragraph 13.b. of the *Rahman* Agreement[1] addressed the disposition of the proceeds of insurance policies which provided coverage to Colkitt and other officers or directors of any of the defendants. It was therein agreed that the proceeds from any such policies would be paid to the United States in partial satisfaction of the settlement amount due from Colkitt. It was further agreed that the United States would not be entitled to recover from defendants or from defendants' counsel any amounts paid or owed by insurers for legal fees and expenses actually incurred.

In November of 2000, National Union informed Pepper Hamilton that defense costs incurred after April 30, 2000 were not payable under the Policy and would not be paid. Colkitt contested National Union's decision to decline coverage and reopened the arbitration proceeding against National Union which had been begun before National Union had initially agreed to defend Colkitt. When the law firm of Reed Smith Shaw & McClay LLP declined to pursue Colkitt's claim for coverage on a contingent fee basis, Colkitt retained the law firm of Marcy L. Colkitt & Associates, P.C. ("MLCA") to represent him in the coverage dispute on a contingent fee basis.[2]

The dispute was addressed in arbitration proceedings which came on for hearing before a commercial arbitration tribunal of the American Arbitration Association. *In the Matter of the Arbitration between Douglas R. Colkitt, M.D. and National Union Fire Insurance Company of Pittsburgh, PA,* AAA No. 14 195 00916 00 SS. Hearings were held over a ten day period between October 24, 2001 and March 26, 2002. Colkitt was represented at these hearings by attorneys who were members of the MLCA firm. On April 24, 2002, the arbitrators made an award in favor of Colkitt and directed that National Union pay Colkitt the sum of $1,791,450.

National Union has not contested the arbitration award and has indicated its willingness to make payment of the amount awarded to the United States and to the Pepper Hamilton and MLCA law firms, provided that this Court approves such payments. Acting pursuant to Paragraph 13.b. of the *Rahman* Settlement Agreement, the United States has agreed to receive $700,000 from the award and has further agreed that Pepper Hamilton should be paid $500,000 as its fees and expenses and that MLCA should be paid $591,450 as its fees and expenses.

The dispute presently before the Court has resulted because GFL Advantage

---

1. Reference is to one of the three settlement agreements reached in this *Rahman* case and approved by the Court on September 8, 2000.

2. Marcy L. Colkitt is the sister of Dr. Douglas R. Colkitt.

Fund, Ltd. ("GFL")[3] has claimed that it is entitled to be paid the amount awarded Colkitt in the arbitration proceedings. GFL obtained a substantial judgment against Colkitt by way of summary judgment proceedings in a case brought by it in the Middle District of Pennsylvania. *GFL Advantage Fund, Ltd. v. Colkitt,* No. 4:CV–97–0526 (M.D.Pa. Memorandum and Order of July 17, 2000), *aff'd* 272 F.3d 189 (3d Cir.2001).[4]

In an attempt to collect on its judgment,[5] GFL has taken steps to garnish purported assets of Colkitt and of various entities in which Colkitt had an interest. When the United States and EquiMed's Trustee objected to these efforts of GFL, the parties "to avoid the costs and burden of litigation" entered into an agreement on January 18, 2002 (the "January 2002 Agreement"). Included as parties to the January 2002 Agreement were GFL, EquiMed's Trustee and the United States. *Inter alia,* GFL agreed to refrain from interfering with so-called "Protected Assets" which were subject to the settlement agreements reached in the *Rahman* and *EquiMed* cases.

On March 26, 2002, GFL served a writ of execution on National Union seeking to garnish what it claimed to be property of Colkitt in the possession of National Union. As a result, National Union has refrained from paying to any party any amount included in the arbitration award.

I

*The Pending Motion*

Presently pending before the Court is a motion filed by Pepper Hamilton and MLCA for distribution of insurance proceeds. These parties have requested that this Court enter an Order distributing the proceeds of the insurance coverage arbitration as follows:

(1) United States—$700,000; (2) Pepper Hamilton—$500,000; and (3) MLCA—$591,450. In support of their motion, Pepper Hamilton and MLCA have submitted to the Court a memorandum of law and numerous exhibits.

The United States has filed a response to the pending motion asserting that its entitlement to $700,000 from the arbitration award is undisputed. The United States further contends that if this Court determines that the movants are not entitled to some or all of the amounts requested by them, then the United States would be entitled to all of these funds to be applied against the $9,885,000 which Colkitt has agreed to pay the United States in satisfaction of the consent judgment entered in this *Rahman* action.

The pending motion was filed in this Court on September 9, 2002. When no opposition to that motion was filed by GFL or any other party within the time required by Local Rule 105.2.a, the Court entered an Order on September 30, 2002 granting the pending motion of Pepper Hamilton and MLCA.

Thereafter, counsel for GFL filed a motion to intervene, an emergency motion for stay of distribution of proceeds and an opposition to the pending motion of Pepper Hamilton and MLCA. On October 7, 2002, the Court granted the motions filed by GFL and permitted GFL to belatedly re-

---

3. GFL is a corporation of the British Virgin Islands.

4. The judgment was based on a loan made by GFL to Colkitt which was secured by stock of the debtor EquiMed.

5. The judgment obtained by GFL against Colkitt is in excess of $21 million.

spond to the pending motion of Pepper Hamilton and MLCA. Recently, Pepper Hamilton and MLCA, and also the United States have submitted reply briefs.

Following its review of the memoranda and exhibits submitted in support of and in opposition to the pending motion for distribution of insurance proceeds, this Court has concluded that no hearing is necessary. *See* Local Rule 105.6. For the reasons stated herein, the motion of Pepper Hamilton and MLCA for distribution of insurance proceeds will be granted.

## II

### *Discussion*

■ In its opposition to the pending motion for distribution of insurance proceeds, GFL is apparently not contesting the United States' right to the proceeds of the award. In the concluding paragraph of its memorandum, GFL asserts that the claim of Pepper Hamilton to fees is inferior to the judgment lien of GFL and that MLCA cannot impose a charging lien on the arbitration award because MLCA has failed to meet its burden of proving that a charging lien is equitably required. GFL therefore argues that its judgment lien is entitled to a priority status over the claims of these attorneys. Nowhere in its memorandum does GFL assert that it has priority status over the right to the proceeds asserted by the United States.

It therefore does not appear that GFL in its opposition to the pending motion is claiming that its lien is superior to the claim of the United States.[6] Indeed, such a position is clearly not supportable. GFL has previously agreed that assets in the hands of the United States or disbursed to the United States by an entity prior to the time of full payment of Colkitt's settlement obligation to the United States will remain free from any claim of GFL. The January 2002 Agreement specifically referred to the settlement in Civil No. H–95–2241 (the *Rahman* action) and to the settlement reached in Civil No. H–00–1216 (the *EquiMed* action). It was noted in several WHEREAS clauses that GFL had filed motions in Florida and elsewhere seeking to collect on its judgment and that the parties accordingly sought by the agreement to avoid the costs and burden of litigation by clarifying their respective interests in various assets allegedly owned by Colkitt and by permitting the continued implementation of the settlement agreements. Paragraph I.E. of the January 2002 Agreement[7] provided as follows:

   E.  GFL shall be entitled to receive prompt notice (but in no event less than seven business days) of the following events: (a) from the United States, on the date when the United Stats has both (i) received Payment in Full of the monetary obligations to the United States pursuant to the Settlement Agreements and (ii) as a result, released all of its liens and claims on the assets of any defendant to the Rahman Action; and (b) from the Trustee, of the day on which all

---

6.  In a Declaration submitted by him in support of the pending motion, Philip H. Lebowitz, Esq., a partner in the Pepper Hamilton law firm, has stated that GFL has conceded in negotiations with the United States and other parties that the United States' interest in the insurance proceeds is superior to that of GFL and that the United States is entitled to the

full payment of these proceeds. Counsel for GFL has not disputed these assertions.

7.  Pursuant to Paragraph II of this Agreement, the parties agreed that this Court and the United States Bankruptcy Court would have exclusive jurisdiction of any dispute arising between and among the parties under the Agreement.

transactions contemplated by the EquiMed Settlement Agreement and involving Colkitt or his related entities as transferring or transferee or beneficiary parties have been completed and the resulting proceeds disbursed to the bankruptcy estate and others. On whichever of the two dates is later (the "Completion Date"), all remaining Protected Assets shall cease to be Protected Assets under this Agreement if at that point Colkitt or his designees have any remaining or reversionary interest in or claim to them. In contrast, it is the intention of this provision that assets remaining in the hands of the United States, or the relator who filed the Rahman Action on the United States' behalf, the Trustee, EquiMed, Inc. or its subsidiaries on the Completion Date, or *assets that have been disbursed by any such individual or entity prior to the Completion Date will remain free from any claim of GFL,* and that the title conveyed to any purchasers under the Settlement Agreement of Cancer Center assets or Closed Cancer Center assets sold thereunder, or sold by the United States, the Rahman Action relator, the Trustee or the EquiMed subsidiaries, will remain undisturbed. (Emphasis added).

As the record here establishes, the United States has not as yet been paid the entire $9,885,000 due from Colkitt as a part of the settlement in this *Rahman* case. Approximately $7.5 million has been paid to the United States to date, but payment in full has not as yet been made. Thus, even were the Court to conclude (as it has not) that the movants are not entitled to a part of the proceeds of the arbitration award, the United States would be entitled to receive the entire sum of $1,791,450.

Paragraph 13.b. of the *Rahman* Agreement specifically refers to proceeds from insurance policies which provided coverage to Colkitt. In its entirety, Paragraph 13.b. is as follows:

b. Subject to the condition that all rights to insurance are retained to defend any claim (including third party claims or cross claims) relating to the Covered Conduct that has or may be made by any party other than the United States, all Parties other than NRTS agree that any proceeds from insurance policies that provide coverage for some or all of the Covered Conduct in which any of the Defendants, or their officers and directors, are insured parties *will be paid to the United States to satisfy the Settlement Amount up to Payment in Full.* Defendants further agree that, to the extent permitted by law, the United States will have ultimate authority to determine: (i) whether to accept a payment by Defendants' insurers for the Covered Conduct, and (ii) whether to commence litigation, or continue active litigation regarding any claims to obtain payment on the relevant policies. Notwithstanding any other provision of this Paragraph, *the United States shall not be entitled to recover from Defendants or Defendants' counsel any amounts paid or owed by insurers for legal fees and expenses actually incurred.* (Emphasis added).

When the provisions of the two agreements set forth hereinabove are considered, it is abundantly clear that GFL is not entitled to claim any part of the proceeds of the arbitration award. The right to receive funds payable by National Union to Colkitt have been assigned to the United States pursuant to the *Rahman* Agreement approved by this Court. The insur-

ance proceeds are under the January 2002 Agreement "Protected Assets" to be disbursed to the United States by an entity. GFL has specifically agreed that such assets distributable to the United States "will remain free from any claim of GFL . . . ."[8] Moreover, Colkitt has no remaining ownership interest in the insurance proceeds which might be subject to garnishment by GFL. Under the *Rahman* Agreement, the proceeds of a Policy like the one issued by National Union were to be paid to the United States to satisfy the amount which Colkitt had agreed to pay.

For these reasons, this Court concludes that under the *Rahman* Agreement and the January 2002 Agreement, the United States is here entitled to all of the proceeds of the insurance coverage arbitration. That the United States has agreed to pay from these proceeds the legal fees and expenses of the movants does not alter its right to receive the entire amount. Both Pepper Hamilton and MLCA have claimed that a part of the award should be paid to them, and the United States has not opposed these claims. The legal services rendered by Pepper Hamilton were covered by the Policy under which National Union agreed to pay compensation for such services rendered to its insured. Moreover, the legal services rendered by MLCA resulted in the award made by the arbitrators. Quite reasonably, the United States, which has been substantially benefitted by the award, has recognized the right of these attorneys to be compensated for the substantial legal services rendered by them.[9]

If this Court were to accept the position of GFL that its lien on the proceeds is superior to the equitable lien of Pepper Hamilton and to the charging lien of MLCA, the entire sum would then be paid to the United States which in turn has agreed to compensate these attorneys for the legal services rendered by them. Rather than permitting the claims of Pepper Hamilton and MLCA to be paid in such a roundabout manner, the Order entered herein by the Court will approve the movants' request to receive amounts sought by them directly from National Union. By way of the Order to be entered here by the Court, National Union must pay into the registry of the Court the sum of $1,791,450. The Clerk has then been directed to distribute the insurance proceeds to the following parties in the following amounts:

1. United States    —   $700,000

2. Pepper Hamilton  —   $500,000

3. MLCA          —   $591,450

■ Counsel for National Union has addressed a letter to the Court advising that there are attachments pending in Pennsylvania courts restraining any distribution by National Union of the arbitration proceeds at issue. In the Order entered herein, this Court has determined that the writ of execution obtained by GFL is of no force and effect insofar as the proceeds of the arbitration award are concerned. Any attempt to attach these proceeds by any other party must likewise fail for the reasons stated herein. This Court has exclusive jurisdiction of the proceeds at issue,

---

8. In its opposition to the pending motion, GFL does not even mention the January 2002 Agreement, nor attempt to deny the obligations assumed by it in that Agreement.

9. Since the Court has determined that GFL previously agreed that assets of Colkitt including these insurance proceeds would remain

free from any claim asserted by it, it is not necessary for this Court to determine whether there has been an equitable assignment to Pepper Hamilton of a portion of these proceeds, nor is there any need for the Court to consider whether MLCA has a charging lien on a portion of these proceeds.

and National Union is now being ordered to pay them into the registry of this Court. Any party attempting to attach these proceeds must assert such a claim in this Court. By paying the arbitration proceeds into the registry of this Court in compliance with this Court's Opinion and Order, National Union will be protected from any claim brought against it by a creditor of Colkitt or one of his entities.

MLCA has requested that the Order entered by this Court grant to it a replacement lien. According to MLCA, it is entitled to a replacement lien in the amount of $190,248.26 against assets pledged to the United States pursuant to the *Rahman* Agreement after payment in full to the United States has been made. This request will be denied. A replacement lien is awarded under certain circumstances in the context of bankruptcy proceedings. MLCA has not cited authority which would support its claim that it is now entitled to a replacement lien under the circumstances here. It is premature for the Court to consider such a request at this time. The United States has not as yet been paid the full amount due from Colkitt under the *Rahman* Agreement. If at some later date the United States has been fully paid, and if the pertinent facts at that time, including the existence of any liens asserted by third parties, would support MLCA's right to a priority charging lien against assets which have been pledged to the United States, MLCA would be entitled to present such a claim to this Court where it would be litigated.

For all the reasons stated, the motion of Pepper Hamilton and MLCA for distribution of insurance proceeds will be granted. An appropriate Order will be entered by the Court.