**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA ex rel.
Syed Rahman, M.D.,
*Plaintiff-Appellee,*

GFL ADVANTAGE FUND, LIMITED,
*Party in Interest-
Appellant,*

PEPPER HAMILTON LLP; MARCY L.
COLKITT & ASSOCIATES,
*Parties in Interest-
Appellees,*

and

SYED RAHMAN, M.D.,
*Plaintiff,*

NATIONAL UNION FIRE INSURANCE
COMPANY; STEADFAST INSURANCE
COMPANY; RELIANCE INSURANCE
COMPANY; HERBARD, LIMITED;
JOHNSON & JOHNSON FINANCE
CORPORATION; DVI FINANCIAL
SERVICES, INCORPORATED; MOBILE
DIAGNOSTECH, INCORPORATED; A.
JEROME DIGIACOBBE, JR; CALVIN
ZONTINE; TREATMENT CENTERS
LIMITED PARTNERSHIP; PFG CAPITAL
CORPORATION; REGIONAL MEDICAL
SERVICES, INCORPORATED,
*Parties in Interest,*

ONCOLOGY SERVICES CORPORATION,
*Third Party Plaintiff,*

v.

No. 02-2317

DOUGLAS COLKITT, M.D.,
                    *Defendant-Appellee,*

          and

ONCOLOGY ASSOCIATES, P.C.;
ONCOLOGY SERVICES CORPORATION;
JERRY DERDEL, M.D.; JOANNE
RUSSELL; ONCOLOGY FUNDING
CORPORATION; STONEBORO ONCOLOGY
ASSOCIATES, P.C.; WARREN
ONCOLOGY ASSOCIATES, P.C.;
PHOENIXVILLE ONCOLOGY ASSOCIATES,
P.C.; LITTLESTOWN ONCOLOGY
ASSOCIATES, P.C.; LEHIGHTON
ONCOLOGY ASSOCIATES, P.C.; EXTON
ONCOLOGY ASSOCIATES, P.C.; BUCKS
COUNTY ONCOLOGY ASSOCIATES, P.C.;
GREENBELT CANCER TREATMENT
CENTER, L.P.; ATLANTIC RADIATION
ONCOLOGY, L.L.C.; DERDEL
RANDALLSTOWN ONCOLOGY
ASSOCIATES, P.C.; DERDEL UNION
MEMORIAL ONCOLOGY ASSOCIATES,
P.C.; DERDEL RIVERSIDE ONCOLOGY
ASSOCIATES, P.C.; DERDEL
CHESAPEAKE ONCOLOGY ASSOCIATES,
P.C.; OKEECHOBEE ONCOLOGY
ASSOCIATES, P.A.; KEY WEST
ONCOLOGY ASSOCIATES, P.A.; TAMPA
ONCOLOGY ASSOCIATES, P.A.;
TREASURE COAST ONCOLOGY
ASSOCIATES, P.A.; LAUDERDALE
LAKES ONCOLOGY; ST. LAWRENCE
ONCOLOGY, P.C.; LIBERTY ONCOLOGY
ASSOCIATES, P.C.; COMMUNITY
RADIATION THERAPY ASSOCIATE, P.C.;

KINGS PLAZA RADIOLOGY, P.C.;
SOUTHERN NEW JERSEY CANCER
TREATMENT; WILLIAMS COUNTY
ONCOLOGY ASSOCIATES, P.C.; PARK
ONCOLOGY ASSOCIATES, P.C.; PARKS
ONCOLOGY ASSOCIATES,
INCORPORATED; GREATER HARRISBURG
CANCER CENTER, INCORPORATED;
MGH CANCER TREATMENT CENTER,
L.P.; ONCOLOGY SERVICES
CORPORATION OF LAWNWOOD; KEYS
CANCER CENTER LIMITED
PARTNERSHIP, KEY WEST HMA,
INCORPORATED, for itself and on
behalf of the Lower Florida Keys
Health System, Incorporated
(collectively, "HMA/Lower Keys");
XCC, INCORPORATED; GREATER
HARRISBURG CANCER CENTER,
INCORPORATED; GPCC,
INCORPORATED; IRCC, INCORPORATED;
KRTC, INCORPORATED; LVCC,
INCORPORATED; MGHCC,
INCORPORATED, MHCC,
INCORPORATED; MARYLAND GENERAL
CANCER CENTER, INCORPORATED; ST.
LUCIE COUNTY RADIATION ONCOLOGY,
LIMITED; ONCOLOGY ASSOCIATES, PC
OF INDIANA; ONCOLOGY ASSOCIATES,
PC OF ALBEMARLE; ONCOLOGY
ASSOCIATES, PC OF LIFE CARE;
ONCOLOGY ASSOCIATES, PC OF
HERITAGE HILLS; DERDEL MARYLAND
GENERAL ONCOLOGY ASSOCIATES, PC;
DERDEL MGH ONCOLOGY
ASSOCIATES, PC;

KANKAKEE ONCOLOGY ASSOCIATES, PC; ONCOLOGY ASSOCIATES, PC OF PITTSBURGH; ONCOLOGY ASSOCIATES, PC OF HARRISBURG; PLEASANT HILLS ONCOLOGY ASSOCIATES, PC; ONCOLOGY ASSOCIATES, PC OF LEBANON; ONCOLOGY ASSOCIATES, P.C. OF SALISBURY; FLAGSTAFF ONCOLOGY ASSOCIATES, PC; FORT PIERCE ONCOLOGY ASSOCIATES, PC; GREENWAY ONCOLOGY ASSOCIATES, PC; GREATER PITTSBURGH ONCOLOGY ASSOCIATES, PC; NORTHWEST RADIATION TREATMENT SERVICES, INCORPORATED; MARLTON ONCOLOGY, PC; RANDALLSTOWN ONCOLOGY CENTER, INCORPORATED; WESTCHESTER ONCOLOGY, PC; CHESAPEAKE REGIONAL CANCER CENTER, INCORPORATED; UNION MEMORIAL ONCOLOGY CENTER, INCORPORATED; CANCER CENTER OF NORTHERN ARIZONA PARTNERSHIP; WILLIAMS COUNTY ONCOLOGY ASSOCIATES, INCORPORATED; TRI STATE ONCOLOGY ASSOCIATES, INCORPORATED; SALISBURY RADIATION ONCOLOGY CENTER, INCORPORATED; HERITAGE HILLS MEDICAL, LP; RIVERSIDE ONCOLOGY; JEFFERSON RADIATION

ONCOLOGY CENTER, LP; ALBEMARLE
REGIONAL CANCER CENTER, LP;
MEDTREND HEALTH SYSTEMS,
INCORPORATED; BROWARD RADIATION
THERAPY CORPORATION; LAKE
OKEECHOBEE CANCER CENTER,
INCORPORATED; LAWNWOOD REGIONAL
CANCER CENTER, LP; ST. LAWRENCE
ONCOLOGY PC OF OGDENSBURG;
PMCB, INCORPORATED; ST.
LAWRENCE ONCOLOGY, PC OF
BROOKLYN; ONCOLOGY SERVICES
CORPORATION OF KEY WEST,
INCORPORATED; ONEONTA RADIATION
ONCOLOGY, PC; ONCOLOGY SERVICES
CORPORATION OF TAMPA,
INCORPORATED; GREENBELT CANCER
TREATMENT CENTER, L.P.; BILLING
SERVICES, INCORPORATED; NATIONAL
MEDICAL FINANCIAL SERVICES
CORPORATION; COLKITT ONCOLOGY
GROUP, INCORPORATED; EQUIMED,
INCORPORATED, a corporation formed
under the laws of Nevis State
College, PA; SKYLINE ONCOLOGY
ASSOCIATES, P.C., Pittsburgh, PA;
MALONE ONCOLOGY ASSOCIATES,
P.C., State College, PA; NIXON
EQUIPMENT CORPORATION, a
corporation formed under the laws
of Nevis State College, PA;

Thomas Jefferson Real Estate Corporation, a corporation formed under the laws of Nevis State College, PA; George Washington Real Estate Corporation, a corporation formed under the laws of Nevis State College, PA; Oaktree Cancer Care, Incorporated; Keystone Oncology, LLC, State College, PA; JMR Medical Associates, P.C.; Carolina Cancer Care, LLC; Southern Oncology, P.A.; Eastern Pennsylvania Oncology, LLC; Massachusetts Radiation Oncology Services, P.C; Chester County Oncology, LLC; Rosewood Cancer Care, Incorporated; Florida Oncology, P.A.; Coastal Oncology, LLC,

*Defendants,*

Merrill Cohen, Chapter 7 Interim Trustee,

*Intervenor-Defendant,*

v.

Highmark, Incorporated, d/b/a Xact Medicare Services; Noridian Mutual Insurance Company, d/b/a Blue Cross/Blue Shield of North Dakota; Aetna Incorporated; Blue Cross/Blue Shield of Florida, Inc.; Health Care Service Corporation, A Mutual Legal Reserve Company;

TRAILBLAZER HEALTH ENTERPRISES,
LLC; BLUE CROSS & BLUE
SHIELD OF MARYLAND, INCORPORATED;
EMPIRE BLUE CROSS AND BLUE
SHIELD; GROUP HEALTH
INCORPORATED; BLUE CROSS/BLUE
SHIELD OF WESTERN NEW YORK,
INCORPORATED; CIGNA
CORPORATION; CONNECTICUT GENERAL
LIFE INSURANCE COMPANY;
NATIONWIDE MUTUAL INSURANCE
COMPANY,
              *Third Party Defendants.*

SOVEREIGN BANK; GLORIA FELIX,
Doctor,
                        *Movants.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-95-2241-H)

Argued: January 23, 2004

Decided: June 7, 2004

Before NIEMEYER, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Eric S. Rein, SCHWARTZ, COOPER, GREENBERGER
& KRAUSS, CHTD., Chicago, Illinois, for Appellant. Tamara Lynn

Fine, Office of the United States Attorney, Baltimore, Maryland, for the United States. David Richman, PEPPER, HAMILTON, L.L.P., Philadelphia, Pennsylvania, for Pepper, Hamilton, L.L.P.; Andrew James Kennedy, MARCY L. COLKITT & ASSOCIATES, P.C., Wayne, Pennsylvania, for Marcy L. Colkitt & Associates, P.C. **ON BRIEF:** Patrick T. Stanton, SCHWARTZ, COOPER, GREENBERGER & KRAUSS, CHTD., Chicago, Illinois, for Appellant. Peter Konilege, MARCY L. COLKITT & ASSOCIATES, P.C., Wayne, Pennsylvania, for Marcy L. Colkitt & Associates, P.C. Daniel A. Spiro, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant GFL Advantage Fund, Ltd. ("GFL") appeals the October 30, 2002 order of the District Court for the District of Maryland (Alexander Harvey II, *Judge*) granting the motion of Appellees Pepper Hamilton LLP ("Pepper Hamilton"), Marcy L. Colkitt & Associates, P.C. ("MLCA") and the United States for distribution of proceeds of a directors' and officers' liability insurance policy held by National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"). Pepper Hamilton, MLCA and the United States claim entitlement to the insurance proceeds pursuant to a settlement agreement between Dr. Douglas Colkitt,[1] the insured, and the United States. GFL claims that the settlement agreement does not entitle the United States to certain portions of the insurance proceeds, and that its claim to those portions is superior to the claims of Pepper Hamilton and MLCA. Because we find that the district court properly interpreted the provision of the settlement agreement at issue, we affirm its order.

---

[1]Marcy L. Colkitt of MLCA and Dr. Colkitt are siblings.

## I.

This appeal arises from a collateral order entered in a *qui tam* action originally filed in 1995 by Syed Rahman (the "*Rahman* action"). In August of 1998, the United States filed its complaint in the *Rahman* action naming as defendants Dr. Douglas Colkitt, his wife, his business partner, and over eighty health care facilities owned, controlled or operated by Dr. Colkitt. The defendants allegedly engaged in a fraudulent billing scheme, defrauding the Medicare and Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") programs of more than $12 million. *See United States ex. rel. Rahman v. Oncology Assocs., P.C.*, 269 B.R. 139, 143-44 (D. Md. 2001). After extensive pretrial proceedings, the parties entered into a Settlement Agreement (the "*Rahman* Agreement").[2] The district court approved the *Rahman* Agreement on September 8, 2000. *See id.* at 144.

As part of this settlement, the defendants agreed to pay the United States $9,885,000. To secure payment in full, the defendants assigned their rights to, *inter alia*, "any proceeds" of liability insurance policies under which one or more defendants, or their officers or directors, were insured. *Rahman* Agreement ¶ 13.b. However, a proviso to ¶ 13.b stated, "Notwithstanding any other provision of this Paragraph, the United States shall not be entitled to recover from Defendants or Defendants' counsel any amounts paid or owed by insurers for legal fees and expenses actually incurred." *Id.*

Dr. Colkitt was an officer and director of National Medical Financial Services, Inc. ("National Medical"), another defendant in the *Rahman* action. As such, Dr. Colkitt sought coverage for his defense costs under National Medical's directors' and officers' liability insurance policy (the "D&O policy") with National Union. In 1999, he requested that National Union accept Pepper Hamilton as his legal counsel. National Union agreed to provide his defense under a reser-

---

[2]The *Rahman* Agreement was one of four settlement agreements entered into by the United States, Dr. Colkitt and other parties to resolve the claims resulting from the practices of Dr. Colkitt's various business enterprises. The other settlement agreements are not relevant to the issues on appeal.

vation of rights, and accepted Pepper Hamilton as counsel for Dr. Colkitt.

Pepper Hamilton represented Dr. Colkitt in the *Rahman* action from 1999 through approval of the *Rahman* agreement. National Union paid Pepper Hamilton directly for its services for most of this time. But in November of 2000, it notified Pepper Hamilton that defense costs incurred after April 30, 2000 were not covered by the D&O policy and would not be paid. Consequently, Dr. Colkitt opened arbitration proceedings against National Union.

After one law firm refused to represent Dr. Colkitt in this insurance coverage dispute on a contingency fee basis, he engaged MLCA. MLCA agreed to accept as payment for its services forty percent of any "payments made by National Union as a result of" a favorable judgment in the arbitration proceeding. (J.A. 227). A tribunal of the American Arbitration Association held a ten-day hearing between October 24, 2001 and March 26, 2002. On April 24, 2002, the arbitrators found in favor of Dr. Colkitt and directed National Union to pay him $1,791,450. On September 6, 2002, Pepper Hamilton and MLCA moved the district court to order distribution of the arbitration award to them and the United States pursuant to ¶ 13.b of the *Rahman* Agreement. Pepper Hamilton, MLCA and the United States had agreed to a division of the arbitration award as follows: $700,000 to the United States, $500,000 to Pepper Hamilton, and $591,450 to MLCA.

On October 7, 2002, the district court permitted GFL to intervene. In July of 2000, GFL had obtained a judgment against Dr. Colkitt for more than $21 million in federal court in Pennsylvania. *See GFL Advantage Fund, Ltd. v. Colkitt*, No. 4:CV-97-0526, 2000 U.S. Dist. LEXIS 21747 (M.D. Pa. July 17, 2000). In an effort to enforce this judgment, GFL had garnished purported assets of Dr. Colkitt and of entities in which Dr. Colkitt had an interest.

GFL's attempts to secure its judgment against Dr. Colkitt threatened to draw it into litigation with the United States because of the government's interests secured in the *Rahman* Agreement. Consequently, GFL and the United States entered into an agreement on January 18, 2002 ("January 2002 Agreement") whereby GFL agreed that

it would not "suffer or permit existing or future charging orders or garnishments to be placed against . . . any entity which is among the Protected Assets."[3] January 2002 Agreement ¶ I.B.4. "Protected Assets" included the insurance proceeds assigned to the United States in ¶ 13.b of the *Rahman* Agreement. *See* January 2002 Agreement ¶ I.A & Ex. F, ¶ 16.

Despite the January 2002 Agreement, on March 26, 2002, GFL sought and obtained a writ of execution attaching the property of Dr. Colkitt in the possession of National Union. *GFL Advantage Fund, Ltd. v. Colkitt*, No. 4:97-CV-526 (M.D. Pa. Mar. 26, 2002). It was based on this writ that GFL sought to intervene as a party-in-interest in the proceedings below.

The court below determined that the issues involved in the motion for distribution of the arbitration award did not require a hearing. Based on the papers submitted to it, the district court held that GFL had no right to any portion of the insurance proceeds obtained as a result of the arbitration:

> The right to receive funds payable by National Union to Colkitt have [sic] been assigned to the United States pursuant to the *Rahman* Agreement approved by this Court. The insurance proceeds are under the January 2002 Agreement "Protected Assets" to be disbursed to the United States by an entity. GFL has specifically agreed that such assets distributable to the United States "will remain free of any claim of GFL . . . ." Moreover, Colkitt has no remaining ownership interest in the insurance proceeds which might be subject to garnishment by GFL. Under the *Rahman* Agreement, the proceeds of a Policy like the one issued by National Union were to be paid to the United States to satisfy the amount which Colkitt had agreed to pay.

[3]The January 2002 Agreement vested the District Court for the District of Maryland and the Bankruptcy Court for the District of Maryland with exclusive jurisdiction over any dispute arising from it. January 2002 Agreement ¶ II.A.

*United States ex rel. Rahman v. Oncology Assocs., P.C.*, 229 F. Supp. 2d 458, 463-64 (D. Md. 2002) (footnote omitted). Thus, even if Pepper Hamilton and MLCA were not entitled to a portion of the arbitration award, "the United States would be entitled to receive the entire sum." *Id.* And because the United States agreed to a particular division of the arbitration award, Pepper Hamilton and MLCA were entitled to their portions of the award in any event. *Id.* at 464.

Both the district court and this Court denied GFL's subsequent applications for a stay of distribution pending appeal. The district court then distributed the arbitration award to the United States, Pepper Hamilton and MLCA according to their agreed-upon apportionment, and this appeal followed.

II.

On appeal, GFL concedes that its claim to the arbitration award is subrogated to that of the United States under the January 2002 Agreement. It also concedes that the arbitration award constitutes "proceeds" within the meaning of ¶ 13.b, nor could it argue otherwise. The award represents insurance proceeds that National Union should have paid under the D&O policy — an insurance policy that falls within the assignment of rights in ¶ 13.b. Rather, GFL argues that the monies owed under the D&O policy to Pepper Hamilton and MLCA's contingency fee are "Non-US proceeds" — proceeds in which the United States has no interest. Under GFL's interpretation, these monies are thus not "Protected Assets" and the January 2002 Agreement does not bar it from attaching these amounts. GFL then argues that its judgment lien takes priority over any interest Pepper Hamilton or MLCA might have in these amounts.

The first question we must answer, then, is whether the United States has any interest, under ¶ 13.b, in "amounts paid or owed by insurers for legal fees and expenses actually incurred." The proper interpretation of a settlement agreement, as with any contract, is a question of law that we review *de novo. Nehi Bottling Co. v. All-Am. Bottling Corp.*, 8 F.3d 157, 161-62 (4th Cir. 1993). When construing a provision of a contract, we must "give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage." *Goodman v. Resolution Trust*

*Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993). With this rule in mind, we address GFL's claims to the portions of the arbitration award claimed by Pepper Hamilton and MLCA in turn.

Paragraph 13.b provides, in pertinent part:

> Subject to the condition that all rights to insurance are retained to defend any claim (including third party claims or cross claims) relating to the Covered Conduct that has or may be made by any party other than the United States, all Parties other than NRTS agree that *any proceeds from insurance policies* that provide coverage for some or all of the Covered Conduct in which any of the Defendants, or their officers or directors, are insured parties *will be paid to the United States to satisfy the Settlement Amount up to Payment in Full. . . .* Notwithstanding any other provision of this Paragraph, *the United States shall not be entitled to recover from Defendants or Defendants' counsel any amounts paid or owed by insurers for legal fees and expenses actually incurred.*

*Rahman* Agreement ¶ 13.b (emphasis added).

Through ¶ 13.b, Dr. Colkitt has assigned his rights to "*any* proceeds" from the D&O policy to the United States. The *Rahman* Agreement does not define the term "proceeds." In the absence of a contractual definition, we give contract terms their ordinary meaning. *See Bynum v. CIGNA Healthcare of N.C., Inc.*, 287 F.3d 305, 313 (4th Cir. 2002) (applying dictionary definition to undefined term in insurance contract). In ordinary usage, "proceeds" means "something that results or accrues," RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1542 (1998); "the net sum received (as for a check, a negotiable note, an insurance policy) after deduction of any discount or charges," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1807 (1986).[4] "Any proceeds" is therefore an all-encompassing phrase. Any

---

[4]In the context of an insurance policy, "after deduction of any . . . charges" would mean the total amount payable under the policy less the deductible and any other sums the insurer would require the insured to pay.

monies resulting from Dr. Colkitt's coverage under the D&O policy for the *Rahman* action are "proceeds" of that policy, and the United States retains a priority interest in them until the Settlement Amount is paid in full. Because "amounts paid or owed by insurers for legal fees and expenses" result from Dr. Colkitt's coverage under the D&O policy, amounts owed to Pepper Hamilton are "proceeds" of the D&O policy and the United States has a security interest in them.

The proviso, when read in full, reinforces this conclusion. It states, "Notwithstanding any other provision of this Paragraph, the United States shall not be entitled to recover from Defendants or Defendants' counsel any amounts paid or owed by insurers for legal fees and expenses actually incurred." *Rahman* Agreement ¶ 13.b. Contrary to GFL's reasoning, the paragraph does not state that the United States shall not be entitled to any amounts owed for legal fees; it provides that the United States "shall not be entitled *to recover from Defendants or Defendants' counsel*" such amounts. *Id.* (emphasis added). GFL's contention that the United States has no interest in amounts paid or owed for legal fees reduces the emphasized language to surplusage, a result we cannot accept. *See Goodman*, 7 F.3d at 1127.

The limitation imposed on the United States by the terms of ¶ 13.b is both specific and narrow. Although the United States is barred from recovering from Dr. Colkitt or Pepper Hamilton legal fees and expenses paid or owed to them, it is not barred from seeking to recover such amounts from another entity. Contrary to GFL's argument, ¶ 13.b creates no "non-US" category of proceeds. The proviso grants the United States a reversionary interest in any "amounts paid or owed by insurers for legal fees and expenses actually incurred." The district court was thus correct to conclude that, if any such amounts were paid to someone other than "Defendants or Defendants' counsel," the United States would be entitled to recover those amounts from that person or entity. Were GFL that other entity, the United States would be entitled to recover those sums; in fact, GFL has conceded that the United States' interest supercedes its own.

But, GFL argues, this interpretation of ¶ 13.b translates a promise by Dr. Colkitt to pay insurance proceeds to the United States into a promise by the United States to pay Dr. Colkitt's attorneys. GFL is mistaken. First, ¶ 13.b is not a mere promise by Dr. Colkitt to pay the

United States; it is an assignment of Dr. Colkitt's right to any proceeds to the United States. Dr. Colkitt no longer has an interest in insurance proceeds to which the United States is entitled; it follows that Dr. Colkitt retains no interest to which GFL's claim can attach.[5] Second, the proviso is not a promise by the United States to pay legal fees to defendant's counsel; it is a promise not to challenge an insurer's determination as to what constitutes legal fees and expenses payable under the policy. The only reason the proviso might appear to be a promise by the United States to pay Pepper Hamilton is that the arbitration award was a lump sum, combining amounts due for legal fees and expenses with the indemnification amount. If National Union had not failed to abide by the terms of the D&O policy, it would have paid Pepper Hamilton as its fees became due. It was these payments that the United States agreed not to seek to recover from Dr. Colkitt or his counsel.

We hold that ¶ 13.b of the *Rahman* Agreement includes in the term "proceeds" amounts payable to Pepper Hamilton for its legal fees and expenses actually incurred during the course of its representation of Dr. Colkitt under the D&O policy. Because ¶ 13.b grants the United States a security interest in "any proceeds" of the D&O policy, amounts owed to Pepper Hamilton are "Protected Assets" to which GFL is not entitled.

Our interpretation of ¶ 13.b does not resolve GFL's claim to MLCA's contingency fee. The proviso applies only to "amounts paid or owed *by insurers* for legal fees and expenses actually incurred." *Rahman* Agreement ¶ 13.b. In context, this language can only refer to legal fees and expenses paid or owed by insurers under an insurance policy "that provide[s] coverage for some or all of the Covered Conduct in which any of the Defendants, or their officers or directors, are insured parties," such as Dr. Colkitt's D&O policy. *Id.* National Union does not owe any legal fees or expenses to MLCA under such a policy. Rather, Dr. Colkitt owes MLCA a portion of the arbitration award pursuant to their contingency fee agreement. Its fee would be

---

[5]We note that Dr. Colkitt theoretically retains a reversionary interest in the proceeds of the D&O policy to the extent any proceeds remain after the United States has been paid in full under the *Rahman* Agreement.

paid out of monies otherwise payable to the United States or Pepper Hamilton. Hence, any interpretation of the proviso would not affect GFL's claim against MLCA.

The analysis, however, does not end there. Dr. Colkitt agreed to pay MLCA's contingency fee out of the arbitration award, *i.e.*, the proceeds of the D&O policy. As we have noted, as a result of his assignment, Dr. Colkitt retained no interest in those proceeds out of which he could agree to pay MLCA. The United States would be entitled to this portion of the arbitration award. As such, MLCA's fee is a "Protected Asset" under the January 2002 Agreement. That agreement therefore precludes GFL from seeking to attach MLCA's contingency fee.[6]

The January 2002 Agreement precludes GFL from seeking to attach the portions of the arbitration award representing Pepper Hamilton's legal fees and expenses and MLCA's contingency fee. We need not determine therefore the priority of GFL's claims relative to those of Pepper Hamilton or MLCA. The remaining issues raised by the parties are thus moot.

### III.

Because we believe, based on the foregoing analysis, that the district court reached the conclusion to which ¶ 13.b is most reasonably amenable, its order is

*AFFIRMED.*

---

[6]The only party that could arguably challenge the United States' right to these proceeds is MLCA. MLCA might be able to establish a charging lien against the arbitration award that would supercede the United States' secured interest. But as the district court noted, "the United States, which has been substantially benefited by the award, [quite reasonably] has recognized the right of these attorneys to be compensated for the substantial legal services rendered by them." *Rahman*, 229 F. Supp. 2d at 464. Because the United States and MLCA have agreed to a particular division of the award between them, we need not address this issue.

SHEDD, Circuit Judge, concurring in the result:

Pepper Hamilton LLP and Marcy L. Colkitt & Associates, P.C. ("MLCA") moved the district court (primarily pursuant to Paragraph 13(b) of the *Rahman* Agreement) for distribution of the $1,791,450 National Union Insurance Company arbitration award, and these law firms — along with the United States — agreed that the award should be divided as follows: $700,000 to the United States; $500,000 to Pepper Hamilton; and $591,450 to MLCA. *United States ex rel. Rahman v. Oncology Assocs.*, 229 F. Supp. 2d 458 (D. Md. 2002). The district court — which had expressly approved the *Rahman* Agreement — granted the motion and ordered the money to be distributed in the manner proposed by the law firms and the United States:

> [T]he United States is . . . entitled to all of the proceeds of the insurance coverage arbitration. That the United States has agreed to pay from these proceeds the legal fees and expenses of the movants does not alter its right to receive the entire amount. Both Pepper Hamilton and MLCA have claimed that a part of the award should be paid to them, and the United States has not opposed these claims. The legal services rendered by Pepper Hamilton were covered by the Policy under which National Union agreed to pay compensation for such services rendered to its insured. Moreover, the legal services rendered by MLCA resulted in the award made by the arbitrators. Quite reasonably, the United States, which has been substantially benefitted by the award, has recognized the right of these attorneys to be compensated for the substantial legal services rendered by them.

> If this Court were to accept the position of GFL that its lien on the proceeds is superior to the equitable lien of Pepper Hamilton and to the charging lien of MLCA, the entire sum would then be paid to the United States which in turn has agreed to compensate these attorneys for the legal services rendered by them. Rather than permitting the claims of Pepper Hamilton and MLCA to be paid in such a roundabout manner, the Order entered herein by the Court will approve the movants' request to receive amounts sought by them directly from National Union.

*Id*. at 464 (footnote omitted).

The district court's resolution of the matter before us is based primarily on its interpretation of the *Rahman* Agreement. Because the district court presided over the settlement of the *Rahman* litigation and approved the *Rahman* Agreement, its interpretation of that settlement agreement is entitled to our deference. *See Simmons v. South Carolina State Ports Auth.*, 694 F.2d 63, 66 (4th Cir. 1982).[1] If I were left to my own devices, I may have reached a different result than the district court. However, based on the arguments presented and the deference due to the district court, I am not convinced that the district court erred. Therefore, I concur in the result reached by the majority. Despite my concurrence, one matter concerning this litigation that appears in the record is left unclear. The *Rahman* Agreement, which is the heart of the controversy before us, provided the United States with a monetary judgment in the amount of $9,885,000 plus interest against Douglas Colkitt and his co-defendants in that case. At the time of the district court's order distributing the arbitration award, the United States had not been paid in full under the *Rahman* Agreement. Subsequent to that order, on July 31, 2003, the United States informed the district court that it had received the full amount owed under the *Rahman* Agreement, and it set forth the sources from which the payments came. *See Joint Status Report And Request For Declaration Of Payment In Full And Other Relief ("Joint Status Report")*, at 3, 12-13. In doing so, the United States represented that it had received from National Medical Financial Services a payment of $700,000, and it specified that this payment relates to "National Union Insurance." *Joint Status Report*, at 13. Nowhere in that document does it appear that the United States accounted for the additional $1,091,450 of the arbitration award that was paid to Pepper Hamilton and MLCA.

It seems to me that in light of the fact that (1) the United States is "entitled to all of the proceeds of the insurance coverage arbitration," and (2) the United States' agreement to pay from these proceeds the law firms' legal fees and expenses "does not alter its right to receive the entire amount," 229 F. Supp. 2d at 464, the United States should be required to credit Colkitt with the entire $1,791,450 of the arbitra-

---

[1]I note that neither GFL nor the law firms were parties to the *Rahman* Agreement.

tion proceeds — rather than only $700,000 — in satisfaction of the judgment created by the *Rahman* Agreement. The United States' gratuitous (though perhaps understandable) decision to pay some of this money to the law firms does not negate the fact that *all* of the money was assigned to the United States by Colkitt under the *Rahman* Agreement for the purpose of satisfying the judgment. A proper accounting of that money would (everything else being equal) free up $1,091,450 for Colkitt's creditors (such as GFL) to pursue. Although the district court is entitled to deference in construing the *Rahman* Agreement, the United States' final accounting appears to be inconsistent with the district court's construction of that agreement.[2]

---

[2]While this issue appears in the record and is worthy of note, the accounting was not appealed, and GFL did not argue that this inconsistency undermines the district court's order distributing the arbitration proceeds.