SHEDD, Circuit Judge,
concurring in the result:
Pepper Hamilton LLP and Marcy L. Colkitt & Associates, P.C. (“MLCA”) moved the district court (primarily pursuant to Paragraph 13(b) of the Rahman Agreement) for distribution of the $1,791,450 National Union Insurance Company arbitration award, and these law firms — along with the United States— agreed that the award should be divided as follows: $700,000 to the United States; $500,000 to Pepper Hamilton; and $591,450 to MLCA. United States ex rel. Rahman v. Oncology Assocs., 229 F.Supp.2d 458 (D.Md.2002). The district court — -which had expressly approved the Rahman Agreement — -granted the motion and ordered the money to be distributed in the manner proposed by the law firms and the United States:
[T]he United States is ... entitled to all of the proceeds of the insurance coverage arbitration. That the United States has agreed to pay from these proceeds the legal fees and expenses of the mov-ants does not alter its right to receive the entire amount. Both Pepper Hamilton and MLCA have claimed that a part of the award should be paid to them, and the United States has not opposed these claims. The legal services rendered by Pepper Hamilton were covered by the Policy under which National Union agreed to pay compensation for such services rendered to its insured. Moreover, the legal services rendered by MLCA resulted in the award made by the arbitrators. Quite reasonably, the United States, which has been substantially benefited by the award, has recognized the right of these attorneys to be compensated for the substantial legal services rendered by them.
If this Court were to accept the position of GFL that its lien on the proceeds is superior to the equitable lien of Pepper Hamilton and to the charging lien of MLCA, the entire sum would then be paid to the United States which in turn has agreed to compensate these attorneys for the legal services rendered by them. Rather than permitting the claims of Pepper Hamilton and MLCA to be paid in such a roundabout manner, the Order entered herein by the Court will approve the movants’ request to re *813 ceive amounts sought by them directly from National Union.
Id. at 464 (footnote omitted).
The district court’s resolution of the matter before us is based primarily on its interpretation of the Rahman Agreement. Because the district court presided over the settlement of the Rahman litigation and approved the Rahman Agreement, its interpretation of that settlement agreement is entitled to our deference. See Simmons v. South Carolina State Ports Auth., 694 F.2d 63, 66 (4th Cir.1982).[1] If I were left to my own devices, I may have reached a different result than the district court. However, based on the arguments presented and the deference due to the district court, I am not convinced that the district court erred. Therefore, I concur in the result reached by the majority. Despite my concurrence, one matter concerning this litigation that appears in the record is left unclear. The Rahman Agreement, which is the heart of the controversy before us, provided the United States with a monetary judgment in the amount of $9,885,000 plus interest against Douglas Colkitt and his co-defendants in that case. At the time of the district court’s order distributing the arbitration award, the United States had not been paid in full under the Rahman Agreement. Subsequent to that order, on July 31, 2003, the United States informed the district court that it had received the full amount owed under the Rahman Agreement, and it set forth the sources from which the payments came. See Joint Status Report And Request For Declaration Of Payment In Full And Other Relief (“Joint Status Report”), at 3, 12-13. In doing so, the United States represented that it had received from National Medical Finaneial Services a payment of $700,000, and it specified that this payment relates to “National Union Insurance.” Joint Status Report, at 13. Nowhere in that document does it appear that the United States accounted for the additional $1,091,450 of the arbitration award that was paid to Pepper Hamilton and MLCA.
It seems to me that in light of the fact that (1) the United States is “entitled to all of the proceeds of the insurance coverage arbitration,” and (2) the United States’ agreement to pay from these proceeds the law firms’ legal fees and expenses “does not alter its right to receive the entire amount,” 229 F.Supp.2d at 464, the United States should be required to credit Colkitt with the entire $1,791,450 of the arbitration proceeds — rather than only $700,000 — in satisfaction of the judgment created by the Rahman Agreement. The United States’ gratuitous (though perhaps understandable) decision to pay some of this money to the law firms does not negate the fact that all of the money was assigned to the United States by Colkitt under the Rahman Agreement for the purpose of satisfying the judgment. A proper accounting of that money would (everything else being equal) free up $1,091,450 for Colkitt’s creditors (such as GFL) to pursue. Although the district court is entitled to deference in construing the Rahman Agreement, the United States’ final accounting appears to be inconsistent with the district court’s construction of that agreement.[2]

. I note that neither GFL nor the law firms were parties to the Rahman Agreement.

. While this issue appears in the record and is worthy of note, the accounting was not appealed, and GFL did not argue that this inconsistency undermines the district court's order distributing the arbitration proceeds.