OPINION
PER CURIAM:
Appellant GFL Advantage Fund, Ltd. (“GFL”) appeals the October 30, 2002 order of the District Court for the District of Maryland (Alexander Harvey II, Judge) granting the motion of Appellees Pepper Hamilton LLP (“Pepper Hamilton”), Marcy L. Colkitt & Associates, P.C. (“MLCA”) and the United States for distribution of proceeds of a directors’ and officers’ liability insurance policy held by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (“National Union”). Pepper Hamilton, MLCA and the United States claim entitlement to the insurance proceeds pursuant to a settlement agreement between Dr. Douglas Colkitt,[1] the insured, and the United States. GFL claims that the settlement agreement does not entitle the United States to certain portions of the insurance proceeds, and that its claim to those portions is superior to the claims of Pepper Hamilton and MLCA Because we find that the district court properly interpreted the provision of the settlement agreement at issue, we affirm its order.
I.
This appeal arises from a collateral order entered in a qui tam action originally filed in 1995 by Syed Rahman (the “Rah-man action”). In August of 1998, the United States filed its complaint in the Rahman action naming as defendants Dr. Douglas Colkitt, his wife, his business partner, and over eighty health care facilities owned, controlled or operated by Dr. Colkitt. The defendants allegedly engaged in a fraudulent billing scheme, defrauding the Medicare and Civilian Health and Medical Program of the Uniformed Services (“CHAMPUS”) programs of more than $12 million. See United States ex rel. Rahman v. Oncology Assocs., P.C., 269 B.R. 139, 143-44 (D.Md.2001). After extensive pretrial proceedings, the parties entered into a Settlement Agreement (the “Rahman Agreement”).[2] The district court approved the Rahman Agreement on September 8, 2000. See id. at 144.
As part of this settlement, the defendants agreed to pay the United States $9,885,000. To secure payment in full, the defendants assigned their rights to, inter alia, “any proceeds” of liability insurance policies under which one or more defendants, or their officers or directors, were insured. Rahman Agreement ¶ 13.b. However, a proviso to ¶ 13.b stated, “Notwithstanding any other provision of this Paragraph, the United States shall not be entitled to recover from Defendants or Defendants’ counsel any amounts paid or owed by insurers for legal fees and expenses actually incurred.” Id.
Dr. Colkitt was an officer and director of National Medical Financial Services, Inc. (“National Medical”), another defendant in the Rahman action. As such, Dr. Colkitt sought coverage for his defense costs under National Medical’s directors’ and officers’ liability insurance policy (the “D & O policy”) with National Union. In 1999, he requested that National Union accept Pepper Hamilton as his legal counsel. National Union agreed to provide his defense under a reservation of rights, and accepted *808 Pepper Hamilton as counsel for Dr. Colk-itt.
Pepper Hamilton represented Dr. Colk-itt in the Rahman action from 1999 through approval of the Rahman agreement. National Union paid Pepper Hamilton directly for its services for most of this time. But in November of 2000, it notified Pepper Hamilton that defense costs incurred after April 30, 2000 were not covered by the D & O policy and would not be paid. Consequently, Dr. Colkitt opened arbitration proceedings against National Union.
After one law firm refused to represent Dr. Colkitt in this insurance coverage dispute on a contingency fee basis, he engaged MLCA. MLCA agreed to accept as payment for its services forty percent of any “payments made by National Union as a result of’ a favorable judgment in the arbitration proceeding. (J.A. 227). A tribunal of the American Arbitration Association held a ten-day hearing between October 24, 2001 and March 26, 2002. On April 24, 2002, the arbitrators found in favor of Dr. Colkitt and directed National Union to pay him $1,791,450. On September 6, 2002, Pepper Hamilton and MLCA moved the district court to order distribution of the arbitration award to them and the United States pursuant to ¶ 13.b of the Rahman Agreement. Pepper Hamilton, MLCA and the United States had agreed to a division of the arbitration award as follows: $700,000 to the United States, $500,000 to Pepper Hamilton, and $591,450 to MLCA.
On October 7, 2002, the district court permitted GFL to intervene. In July of 2000, GFL had obtained a judgment against Dr. Colkitt for more than $21 million in federal court in Pennsylvania. See GFL Advantage Fund, Ltd. v. Colkitt, No. 4:CV-97-0526, 2000 U.S. Dist. LEXIS 21747 (M.D.Pa. July 17, 2000). In an effort to enforce this judgment, GFL had garnished purported assets of Dr. Colkitt and of entities in which Dr. Colkitt had an interest.
GFL’s attempts to secure its judgment against Dr. Colkitt threatened to draw it into litigation with the United States because of the government’s interests secured in the Rahman Agreement. Consequently, GFL and the United States entered into an agreement on January 18, 2002 (“January 2002 Agreement”) whereby GFL agreed that it would not “suffer or permit existing or future charging orders or garnishments to be placed against ... any entity which is among the Protected Assets.”[3] January 2002 Agreement ¶ I.B.4. “Protected Assets” included the insurance proceeds assigned to the United States in ¶ 13.b of the Rahman Agreement. See January 2002 Agreement ¶ I.A & Ex. F, ¶ 16.
Despite the January 2002 Agreement, on March 26, 2002, GFL sought and obtained a writ of execution attaching the property of Dr. Colkitt in the possession of National Union. GFL Advantage Fund, Ltd. v. Colkitt, No. 4:97-CV-526 (M.D.Pa. Mar. 26, 2002). It was based on this writ that GFL sought to intervene as a party-in-interest in the proceedings below.
The court below determined that the issues involved in the motion for distribution of the arbitration award did not require a hearing. Based on the papers submitted to it, the district court held that GFL had no right to any portion of the insurance proceeds obtained as a result of the arbitration:
*809 The right to receive funds payable by National Union to Colkitt have [sic] been assigned to the United States pursuant to the Rahman Agreement approved by this Court. The insurance proceeds are under the January 2002 Agreement “Protected Assets” to be disbursed to the United States by an entity. GFL has specifically agreed that such assets distributable to the United States “will remain free of any claim of GFL.... ” Moreover, Colkitt has no remaining ownership interest in the insurance proceeds which might be subject to garnishment by GFL. Under the Rahman Agreement, the proceeds of a Policy like the one issued by National Union were to be paid to the United States to satisfy the amount which Colkitt had agreed to pay.
United States ex rel. Rahman v. Oncology Assocs., P.C., 229 F.Supp.2d 458, 463-64 (D.Md.2002) (footnote omitted). Thus, even if Pep-per Hamilton and MLCA were not entitled to a portion of the arbitration award, “the United States would be entitled to receive the entire sum.” Id. And because the United States agreed to a particular division of the arbitration award, Pepper Hamilton and MLCA were entitled to their portions of the award in any event. Id. at 464.
Both the district court and this Court denied GFL’s subsequent applications for a stay of distribution pending appeal. The district court then distributed the arbitration award to the United States, Pepper Hamilton and MLCA according to their agreed-upon apportionment, and this appeal followed.
II.
On appeal, GFL concedes that its claim to the arbitration award is subrogated to that of the United States under the January 2002 Agreement. It also concedes that the arbitration award constitutes “proceeds” within the meaning of ¶ 13.b, nor could it argue otherwise. The award represents insurance proceeds that National Union should have paid under the D & O policy — an insurance policy that falls within the assignment of rights in ¶ 13.b. Rather, GFL argues that the monies owed under the D & O policy to Pepper Hamilton and MLCA’s contingency fee are “Non-US proceeds”- — proceeds in which the United States has no interest. Under GFL’s interpretation, these monies are thus not “Protected Assets” and the January 2002 Agreement does not bar it from attaching these amounts. GFL then argues that its judgment lien takes priority over any interest Pepper Hamilton or MLCA might have in these amounts.
The first question we must answer, then, is whether the United States has any interest, under ¶ 13.b, in “amounts paid or owed by insurers for legal fees and expenses actually incurred.” The proper interpretation of a settlement agreement, as with any contract, is a question of law that we review de novo. Nehi Bottling Co. v. All-Am. Bottling Corp., 8 F.3d 157, 161-62 (4th Cir.1993). When construing a provision of a contract, we must “give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplus-age.” Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1127 (4th Cir.1993). With this rule in mind, we address GFL’s claims to the portions of the arbitration award claimed by Pepper Hamilton and MLCA in turn.
Paragraph 13.b provides, in pertinent part:
Subject to the condition that all rights to insurance are retained to defend any claim (including third party claims or cross claims) relating to the Covered Conduct that has or may be made by *810 any party other than the United States, all Parties other than NRTS agree that any proceeds from insurance policies that provide coverage for some or all of the Covered Conduct in which any of the Defendants, or their officers or directors, are insured parties will be paid to the United States to satisfy the Settlement Amount up to Payment in Full. ... Notwithstanding any other provision of this Paragraph, the United States shall not be entitled to recover from Defendants or Defendants’ counsel any amounts paid or oived by insurers for legal fees and expenses actually incurred.
Rahman Agreement ¶ 13.b (emphasis added).
Through ¶ 13.b, Dr. Colkitt has assigned his rights to “any proceeds” from the D & 0 policy to the United States. The Rah-man Agreement does not define the term “proceeds.” In the absence of a contractual definition, we give contract terms their ordinary meaning. See Bynum v. Cigna Healthcare of N.C., Inc., 287 F.3d 305, 313 (4th Cir.2002) (applying dictionary definition to undefined term in insurance contract). In ordinary usage, “proceeds” means “something that results or accrues,” RANDOM HOUSE WEBSTER’S UNABRIDGED DICTIONARY 1542 (1998); “the net sum received (as for a check, a negotiable note, an insurance policy) after deduction of any discount or charges,” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY 1807 (1986).[4] “Any proceeds” is therefore an all-encompassing phrase. Any monies resulting from Dr. Colkitt’s coverage under the D & 0 policy for the Rahman action are “proceeds” of that policy, and the United States retains a priority interest in them until the Settlement Amount is paid in full. Because “amounts paid or owed by insurers for legal fees and expenses” result from Dr. Colkitt’s coverage under the D & 0 policy, amounts owed to Pepper Hamilton are “proceeds” of the D & 0 policy and the United States has a security interest in them.
The proviso, when read in full, reinforces this conclusion. It states, “Notwithstanding any other provision of this Paragraph, the United States shall not be entitled to recover from Defendants or Defendants’ counsel any amounts paid or owed by insurers for legal fees and expenses actually incurred.” Rahman Agreement ¶ 13.b. Contrary to GFL’s reasoning, the paragraph does not state that the United States shall not be entitled to any amounts owed for legal fees; it provides that the United States “shall not be entitled to recover from Defendants or Defendants’ counsel” such amounts. Id. (emphasis added). GFL’s contention that the United States has no interest in amounts paid or owed for legal fees reduces the emphasized language to surplus-age, a result we cannot accept. See Goodman, 7 F.3d at 1127.
The limitation imposed on the United States by the terms of ¶ 13.b is both specific and narrow. Although the United States is barred from recovering from Dr. Colkitt or Pepper Hamilton legal fees and expenses paid or owed to them, it is not barred from seeking to recover such amounts from another entity. Contrary to GFL’s argument, ¶ 13.b creates no “non-US” category of proceeds. The proviso grants the United States a reversionary interest in any “amounts paid or owed by insurers for legal fees and expenses actually incurred.” The district court was thus *811 correct to conclude that, if any such amounts were paid to someone other than “Defendants or Defendants’ counsel,” the United States would be entitled to recover those amounts from that person or entity. Were GFL that other entity, the United States would be entitled to recover those sums; in fact, GFL has conceded that the United States’ interest supercedes its own.
But, GFL argues, this interpretation of ¶ 13.b translates a promise by Dr. Colkitt to pay insurance proceeds to the United States into a promise by the United States to pay Dr. Colkitt’s attorneys. GFL is mistaken. First, ¶ 13.b is not a mere promise by Dr. Colkitt to pay the United States; it is an assignment of Dr. Colkitt’s right to any proceeds to the United States. Dr. Colkitt no longer has an interest in insurance proceeds to which the United States is entitled; it follows that Dr. Colk-itt retains no interest to which GFL’s claim can attach.[5] Second, the proviso is not a promise by the United States to pay legal fees to defendant’s counsel; it is a promise not to challenge an insurer’s determination as to what constitutes legal fees and expenses payable under the policy. The only reason the proviso might appear to be a promise by the United States to pay Pepper Hamilton is that the arbitration award was a lump sum, combining amounts due for legal fees and expenses with the indemnification amount. If National Union had not failed to abide by the terms of the D & 0 policy, it would have paid Pepper Hamilton as its fees became due. It was these payments that the United States agreed not to seek to recover from Dr. Colkitt or his counsel.
We hold that ¶ 13.b of the Rahman Agreement includes in the term “proceeds” amounts payable to Pepper Hamilton for its legal fees and expenses actually incurred during the course of its representation of Dr. Colkitt under the D & 0 policy. Because ¶ 13.b grants the United States a security interest in “any proceeds” of the D & 0 policy, amounts owed to Pepper Hamilton are “Protected Assets” to which GFL is not entitled.
Our interpretation of ¶ 13.b does not resolve GFL’s claim to MLCA’s contingency fee. The proviso applies only to “amounts paid or owed by insurers for legal fees and expenses actually incurred.” Rahman Agreement ¶ 13.b. In context, this language can only refer to legal fees and expenses paid or owed by insurers under an insurance policy “that provide[s] coverage for some or all of the Covered Con-duct in which any of the Defendants, or their officers or directors, are insured parties,” such as Dr. Colkitt’s D & 0 policy. Id. National Union does not owe any legal fees or expenses to MLCA under such a policy. Rather, Dr. Colkitt owes MLCA a portion of the arbitration award pursuant to their contingency fee agreement. Its fee would be paid out of monies otherwise payable to the United States or Pepper Hamilton. Hence, any interpretation of the proviso would not affect GFL’s claim against MLCA.
The analysis, however, does not end there. Dr. Colkitt agreed to pay MLCA’s contingency fee out of the arbitration award, ie., the proceeds of the D & 0 policy. As we have noted, as a result of his assignment, Dr. Colkitt retained no interest in those proceeds out of which he could agree to pay MLCA. The United States would be entitled to this portion of the arbitration award. As such, MLCA’s fee is a “Protected Asset” under the Janu *812 ary 2002 Agreement. That agreement therefore precludes GFL from seeking to attach MLCA’s contingency fee.[6]
The January 2002 Agreement precludes GFL from seeking to attach the portions of the arbitration award representing Pepper Hamilton’s legal fees and expenses and MLCA’s contingency fee. We need not determine therefore the priority of GFL’s claims relative to those of Pepper Hamilton or MLCA. The remaining issues raised by the parties are thus moot.
III.
Because we believe, based on the foregoing analysis, that the district court reached the conclusion to which ¶ 13.b is most reasonably amenable, its order is

AFFIRMED.

. Marcy L. Colkitt of MLCA and Dr. Colkitt are siblings.

. The Rahman Agreement was one of four settlement agreements entered into by the United States, Dr. Colkitt and other parties to resolve the claims resulting from the practices of Dr. Colkitt’s various business enterprises. The other settlement agreements are not relevant to the issues on appeal.

. The January 2002 Agreement vested the District Court for the District of Maryland and the Bankruptcy Court for the District of Maryland with exclusive jurisdiction over any dispute arising from it. January 2002 Agreement ¶ II.A.

. In the context of an insurance policy, “after deduction of any ... charges” would mean the total amount payable under the policy less the deductible and any other sums the insurer would require the insured to pay.

. We note that Dr. Colkitt theoretically retains a reversionary interest in the proceeds of the D & O policy to the extent any proceeds remain after the United States has been paid in full under the Rahman Agreement.

. The only party that could arguably challenge the United States’ right to these proceeds is MLCA. MLCA might be able to establish a charging lien against the arbitration award that would supercede the United States' secured interest. But as the district court noted, "the United States, which has been substantially benefited by the award, [quite reasonably] has recognized the right of these attorneys to be compensated for the substantial legal services rendered by them.” Rahman, 229 F.Supp.2d at 464. Because the United States and MLCA have agreed to a particular division of the award between them, we need not address this issue.